UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 11-86-GWU

JULIE ANN EASTIN,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities?  If not, a
        finding of non-disability is made and the claim is denied.

1

11-86  Julie Ann Eastin

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

        Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

2

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ."
Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).   If this non-exertional
impairment is significant, the Commissioner may still use the rules as a framework
for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);
however, merely using the term "framework" in the text of the decision is insufficient,
if a fair reading of the record reveals that the agency relied entirely on the grid.  Id.
In such cases, the agency may be required to consult a vocational specialist.
Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial
evidence to support the Commissioner's decision may be produced through reliance
on this expert testimony only if the hypothetical question given to the expert
accurately portrays the plaintiff's physical and mental impairments.   Varley v.
Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Julie Ann Eastin, was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of degenerative disc disease of the
lumbar spine, chronic obstructive pulmonary disease, a mood disorder, and post
traumatic stress disorder.  (Tr. 39).  Nevertheless, based in part on the testimony
of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the
residual functional capacity to perform a significant number of jobs existing in the

economy, and therefore was not entitled to benefits.  (Tr. 40-45).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 43-year-old woman with a high school education and work experience as a grounds keeper and machine operator, could perform any jobs if she were limited to lifting no more than 10 pounds occasionally with occasional standing and walking during an eight-hour work day, was limited to a "clean air environment" where she could not be exposed to respiratory irritants, and was also limited to a low stress work environment.  (Tr. 863-4).  The VE responded that there were sedentary level jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 864).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, or if there has been an error of law.[1]

The plaintiff alleged disability beginning in 1999 due to depression, panic attacks, breathing problems, pain problems, and thyroid problems.  (Tr. 179).  She felt that her worst problem was lower back pain, but she also had to use various

---

[1]There is an additional issue in that the plaintiff's Date Last Insured (DLI) for purposes of her DIB application was March 31, 2004 (Tr. 166), meaning that she was required to prove disability before that date in order to be entitled to DIB.  The ALJ found that the plaintiff did not have any "severe" impairments as of the DLI (Tr. 39), a conclusion that the plaintiff does not challenge on appeal.  The following discussion concerns her SSI application.

medications for breathing problems and was now using oxygen 24 hours a day, seven days a week, and she also had difficulty due to fibromyalgia throughout her body.  (Tr. 840-44, 854).  She described being a virtual recluse in her apartment due to panic attacks and a bipolar disorder.  (Tr. 845-46, 850).  A cane had been prescribed to help her walk approximately a year before the hearing, and then a walker shortly afterwards.  (Tr. 854).  She had been in a wheelchair since being released from the hospital two weeks earlier, authorized by her treating physician, Dr. Zineddin.  (Tr. 833).

The plaintiff's daughter testified that her mother had had a breakdown approximately ten years earlier and she had taken over being the "mom" of the household at that point.  (Tr. 860).  Her mother had never really gone anywhere or done anything, but did nothing at all now.  (Tr. 861).  Her duties included giving her mother baths, cooking, shopping, and cleaning.  (Tr. 862).

From a physical point of view, Dr. Mohamed Zineddin, the treating physician, submitted office notes, beginning approximately 2008, and he had also attended the plaintiff at certain hospitalizations.  (E.g., Tr. 669-70, 708-12, 740).  He submitted three residual functional capacity (RFC) assessment forms dated July 31, 2009, one of which was designated as an "arthritis" RFC, another as a "pulmonary" RFC and the third a "fibromyalgia" RFC.  In the arthritis RFC, he listed problems including poor grip, cramping, reduced range of motion of the back, knees, hands, joint

instability, sensory changes, tenderness, trigger points, swelling, and muscle spasms/weakness/atrophy. He considered that emotional factors contributed to the severity of symptoms and functional impairment, that pain would constantly interfere with attention and concentration, and that his patient was incapable of even low stress jobs. (Tr. 696-97). He opined that she could lift less than 10 pounds, could sit, stand, and walk less than two hours a day with normal breaks, could stand only 5 minutes without interruption and sit 15 minutes without interruption and was required to use a walker. (Tr. 697-98). She could occasionally crouch and squat, but could never perform any postural activities, had significant limitations with reaching, handling, and feeling, and was likely to be absent more than four days a month. (Tr. 699). Restrictions in the fibromyalgia RFC were similar, with listed symptoms including multiple tender points, numbness, tingling, non-restorative sleep, morning stiffness, and muscle weakness. (Tr. 704). In the pulmonary RFC, the physician described problems with chronic obstructive pulmonary disease, as well as chronic bronchitis, and indicated that the plaintiff was on daily oxygen and breathing treatments. (Tr. 700-01). She was required to avoid all exposure to pulmonary irritants and would be absent more than four days a month. (Tr. 703).

The ALJ rejected Dr. Zineddin's opinion, stating that "it is not supported by the objective findings or the claimant's history," without giving any specific examples. The ALJ stated that she would give great weight to the opinion of

Consultative Physical Examiner Nathan Joos.  (Id.).  Dr. Joos conducted a one-time examination on September 19, 2009, at which the plaintiff arrived in a wheelchair. (Tr. 721).  However, as the ALJ noted, she appeared to be able to stand and walk about the room during the examination with minimal difficulty, and did not use a cane.  (Tr. 42-3, 721, 723).  Although the plaintiff required the use of oxygen at home, she was not using it during the examination, and appeared to have only minimal wheezing.  (Tr. 722).  The ALJ also noted that her complaints of fibromyalgia and other muscle pains were belied by a finding of normal grip strength and strength in other extremities.  (Tr. 43).  The ALJ summarized the consultative physician's opinion as being that the plaintiff could lift and carry 10 pounds occasionally, stand and walk less than 30 minutes in an eight-hour day, and sit seven hours in an eight-hour day.  (Tr. 42).  She felt that this was "essentially" sedentary work, and gave Dr. Joos's opinion great weight because of the recency of the evaluation and because it was supported by objective findings.

The plaintiff raises several issues regarding the ALJ's physical findings.

First, she notes that under the Commissioner's regulations an ALJ must always give "good reasons" for rejecting a treating physician opinion.  20 C.F.R. § 416.927(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).  The decision "must contain specific reasons given to the treating source's medical opinion, supported by the evidence in the case record, and must

be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Social Security Ruling (SSR) 96-2p, at *5, quoted in Wilson, 378 F.3d at 544.  This is required both for meaningful appellate review and to allow claimants to understand disposition of their cases.

In the present case, the mere statement that the treating physician's opinions were not supported by objective findings or the claimant's history, without giving any specific examples, is problematical by itself.  Moreover, § 416.927(d)(2) does not allow the ALJ to merely reject a treating source opinion.  It is necessary to apply certain enumerated factors in determining what weight to give the opinion.  Id.  For instance, although Dr. Joos may have found minimal wheezing on his one examination, the plaintiff was prescribed oxygen by a physician in January, 2009 due to low oxygen saturation (Tr. 603) and she was hospitalized repeatedly for pneumonia and exacerbations of COPD (Tr. 495, 506, 519, 669, 738-40).  Pulmonary function testing associated with Dr. Joos's examination showed an FEV1 of only 53 percent of predicted, and no improvement with bronchodilation.  (Tr. 733).  Again, although Dr. Joos's single examination might not have shown significant physical abnormalities, Dr. Zineddin noted at different times paraspinal spasms, muscle pain and tenderness and a poor grip (Tr. 708-9, 711), and he prescribed the narcotic medication Vicodin for back pain after a hospitalization in July, 2009 (Tr.

670).  Moreover, as previously described, he did assert that the plaintiff had multiple tender points in diagnosing fibromyalgia, and the only reason given by the ALJ for discounting the finding was that Dr. Joos found normal muscle and grasp strength. (Tr. 43).   However, normal muscle and grasp strength are not relevant to a diagnosis of fibromyalgia.  Rogers v. Commissioner of Social Security, 486 F.3d 234, 244 (6th Cir. 2007).

In short, the ALJ's failure to evaluate the evidence in detail renders her cursory rejection of Dr. Zineddin's opinions inadequate under the regulations.

Additionally, it should be noted that despite the fact that Dr. Joos found relatively few objective abnormalities, he ultimately limited the plaintiff to what was apparently less than full-time sitting, standing, and walking, a point which the ALJ noted (Tr. 42) but did not further comment upon, in finding that the plaintiff could perform sedentary work.  There were additional contradictions in his assessment, in that he indicated at one point that the plaintiff did not require the use of a cane, but elsewhere stated that it was medically necessary and she could ambulate less than 30 feet without it.  (Tr. 728).  He also felt that she could never use foot controls, be exposed to unprotected heights, moving mechanical parts, or vibrations, and could not shop, operate a motor vehicle, walk a block on uneven surfaces, use public transportation, climb steps without a handrail, prepare a simple meal, or sort,

11-86  Julie Ann Eastin

handle, and use paper files.  (Tr. 729-32).  Therefore, it would not appear that the opinion of any examining source supports the ALJ's functional assessment.

Turning to mental issues, the plaintiff points out that her treating psychiatrist, Dr. Chloe Mullen, indicated in February, 2009 that she was so profoundly depressed that she could not work.  (Tr. 652).  The Commissioner notes that Dr. Mullen subsequently indicated that her condition had improved, which is true (e.g., Tr. 654). She did not specifically comment on her patient's ability to work, however.  The Sixth Circuit has noted in an unpublished case that a physician's indication that a patient felt "better . . . does not provide the ALJ with substantial evidence from which to find that Plaintiff's mental impairment has subsided . . . .  Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment.  This cannot be so." Boulis-Gasche v. Commissioner of Social Security, No. 10-5446 (6th Cir. Aug. 23, 2011), slip op. at 10-11.  Additionally, the ALJ did not mention Dr. Mullen's statement at all, leaving open the possibility that it was simply overlooked.  Bowen v. Commissioner of Social Security, 478 F.3d 742, 747 (6th Cir. 2007).

The ALJ also rejected the restrictions given by Consultative Psychologist David Chiappone, who diagnosed a pain disorder due to psychological factors and a general medical condition (depression and anxiety), and borderline intellectual functioning, with a current Global Assessment of Functioning (GAF) score of 48 (Tr.

12

11-86  Julie Ann Eastin

289-90).   A GAF score of 41 to 50 reflects serious symptoms or any serious impairment in social, occupational, or school functioning.   He felt that she could understand simple, one- and two-step job instructions, but was moderately impaired in her ability to remember them, and also had a moderately impaired ability to maintain attention and concentration, and to relate to coworkers, supervisors, and the public, along with a moderately reduced tolerance for stress.  (Tr. 289).  The ALJ rejected the limitations because her symptoms were based solely on her statements and there were no objective findings and only sporadic treatments.  (Tr. 43).  However, the Sixth Circuit has noted that it is not unusual to diagnose mental impairments based on a clinical interview alone, and that it is poor practice to chastise a person with a mental impairment for lack of zeal in seeking treatment.  Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989).  The ALJ further found the mental limitations not credible due to the plaintiff's history of symptom exaggeration and her use of a wheelchair, walker, cane, and oxygen without any apparent need.  (Id.).  As previously noted, the oxygen was apparently prescribed (Tr. 603, 669, 701), her treating physician said she must use a walker (Tr. 698), and the consultative examiner said a cane was medically necessary (Tr. 728).  Therefore, the ALJ's reasoning in rejecting the mental restrictions was inadequate.

Nor could the ALJ properly rely on state agency reviewing psychologists Jan Jacobson and Ed Ross.  (Tr. 306-8, 386-8).  At a minimum, both of these reviewers

11-86  Julie Ann Eastin

limited the plaintiff's ability to sustain attention for simple tasks to two-hour segments in an eight-hour day, and since this restriction was not provided in the hypothetical question, the VE's answer would not provide substantial evidence to carry the defendant's burden of showing there were jobs the plaintiff could perform. Ealy v. Commissioner of Social Security, 594 F.3d 504, 516-17 (6th Cir. 2010).

The decision will be remanded for further consideration of the SSI claim only.

This the 18th day of May, 2012.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

14